UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON ANDERSON,

        Petitioner,

                                              Case No. 14-cv-13856

v.

                                              HON. MARK A. GOLDSMITH

LORI GIDLEY,

        Respondent.

_____/

**OPINION AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE**
**A CERTIFICATE OF APPEALABILITY**

This is a habeas case brought by a Michigan prisoner, through counsel, under 28 U.S.C. § 2254 (Dkt. 1).   Petitioner Shannon Anderson was convicted after a jury trial in the Macomb Circuit Court of second-degree murder, Mich. Comp. Laws § 750.317; assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and commission of a felony with a firearm, Mich. Comp. Laws § 750.227b. He was sentenced to concurrent terms of 215-to-480 months' imprisonment for the murder conviction, 67-to-120 months' imprisonment for the assault conviction, 36-to-60 months' imprisonment for the felon-in-possession conviction, and a consecutive two-year term for the firearm conviction.

The petition raises six claims: (i) the trial court erred in admitting a witness's prior consistent statement, (ii) the trial court erred in excluding videotaped evidence of a witness's interview with the police, (iii) a police officer testified regarding Petitioner's exercise of his right to remain silent, (iv) the prosecutor committed misconduct during closing arguments, (v) Petitioner was denied the effective assistance of trial counsel, and (vi) cumulative error denied

1

Petitioner a fair trial.

For the reasons stated below, the Court denies the petition because the state-court adjudication of his claims did not involve an unreasonable application of clearly established Supreme Court law.   The Court further declines to issue a certificate of appealability.

## I.   BACKGROUND

Petitioner was convicted of offenses in connection with his participation in a shootout occurring at his beauty salon.   Petitioner was tried twice.   His first trial ended in a conviction that was reversed on appeal.   See People v. Anderson, No. 290688 (Mich. Ct. App. Nov. 17, 2009) (per curiam) (Dkt. 5-39).

At Petitioner's second trial, the evidence showed that Petitioner operated the Wild Stylz beauty salon in Eastpointe.   The shooting occurred on January 15, 2007.   It was not disputed at trial that Petitioner shot and injured Troy Christian, and shot and killed Stanley Rhynes. Petitioner claimed at trial that the shooting was performed in self-defense.

Christian testified that he was a longtime friend of Rhynes.   The two worked at the same Chrysler plant.   Rhynes was a marijuana dealer, and Christian served as his middleman. Christian and Rhynes were introduced to Petitioner in August 2006 through Petitioner's sister, who also worked at the plant.

Christian testified he had brokered several deals where Rhynes would buy several pounds of marijuana from Petitioner.   On January 15, 2007, Christian testified he negotiated a purchase of ten pounds of marijuana from Petitioner over a series of cellphone conversations.   Christian and Rhynes were supposed to meet Petitioner at a restaurant, but Petitioner directed them in the parking lot to go to his salon.   Shortly after they entered the salon, Christian testified that Petitioner pulled a gun from what he thought was the bag of marijuana and began to fire.

Christian ran and drew his own handgun, but he was shot in the pelvis and elbow.   He

2

hid for a short time in the building and yelled for Rhynes.   When there was no response, he returned and saw Rhynes lying face-down in a pool of blood.   Christian ran outside and yelled for help.   He then saw Petitioner and the two exchanged insults and shots.   Ballistics evidence showed that none of the shots fired inside the salon was fired by Christian's guns.

Employees and customers from nearby businesses heard the yells for help and gunfire, and they saw individuals running with guns.   Petitioner fled the scene.   Christian remained in the parking lot.   When police arrived Christian told them he had a gun, that Petitioner shot him, and that another man was shot and lying inside the salon.   Police discovered over $34,000 in cash and another pistol owned by Christian on Rhynes's body.   Rhynes had been shot multiple times from the same weapon in the head and chest from close range.   The gun found on Rhynes's body had not been fired.

Petitioner testified to a different account of the incident.   He testified that he was not meeting with Christian for a new sale, but rather to settle an outstanding debt for $30,000 from an earlier deal.   He went to a restaurant to meet with the pair, but he left when they did not show.   He returned to his salon and was alarmed to see Christian and Rhynes there.

Petitioner testified that Christian and Rhynes looked around in a way that made him suspicious.   Petitioner explained that he was on guard because he had been shot nine days earlier during a robbery.   He was also alarmed because Christian mentioned this prior shooting, even though he had not told either of them about it.   Petitioner testified that when Christian and Rhynes suddenly appeared to go for their guns, he was quicker on the draw and fired at them in self-defense.

The jury chose to accept Christian's testimony over Petitioner's and found Petitioner guilty of the offenses described above.

Following his conviction and sentence on retrial, Petitioner filed a claim of appeal in the

3

Michigan Court of Appeals. His appellate brief raised the following claims:

    i.    The trial court improperly allowed the prosecution to bolster the testimony of its star witness, Troy Christian, with his purported "prior consistent statements." This evidentiary error denied appellant his due process rights to a fair trial. US Const, Am XIV; Const 1963, Art 1, §17.

    ii.    The police memorialized two interviews with Troy Christian in audio/video recordings. The trial court's denial of the defense-request to use these recordings, in digitized form, on cross examination for impeachment abridged appellant Anderson's constitutional right to confrontation, to present a defense, to effective assistance of counsel, and to a fair trial.

    iii.    Appellant invoked his Fifth Amendment privilege to remain silent when he hired a lawyer to arrange his voluntary surrender for arrest. During the prosecution's case-in-chief, police detective Baker impermissibly commented on Anderson's post-arrest silence by stating "I would have loved to have gotten an initial statement from Mr. Anderson also." In denying the motion for a mistrial, the trial court deprived defendant of his due process rights to a fair trial. US Const, Am V, XIV; Const 1963, art 1, §17.

    iv.    The defense objected to admission of graphic autopsy photographs of the deceased, as substantially more prejudicial than probative and serving no purpose other than to inflame the passions of the jury. In admitting the photographs, the trial court erred and denied the due-process right to a fair trial.

    v.    The cumulative effect of the prosecutor's misconduct denied appellant a fair trial.

    vi.    Ineffective assistance of counsel denied appellant a fair trial.

    vii.    The cumulative effect of error requires that appellant be granted a new trial.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. People v. Anderson, No. 302023, 2013 WL 6124284 (Mich. Ct. App. Nov. 21, 2013). Petitioner appealed this decision to the Michigan Supreme Court, but his application for leave to appeal was denied by standard form order. People v. Anderson, 846 N.W.2d 397 (Mich. 2014).

4

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010).  A "state court's determination that a claim

lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See

28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.  Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.   ANALYSIS

#### A.  Admission of Christian's Prior Consistent Statements

Petitioner's first claim asserts that his right to confront witnesses under the Sixth Amendment and his right to a fair trial under the Due Process Clause of the Fourteenth Amendment were violated by admission of Christian's February 12 statement to police while he was in jail, offered by the prosecution to show that his trial testimony was consistent with statements made before he had a motivation to fabricate due to his plea bargain.

Petitioner makes several arguments in support of this claim. Petitioner first argues that the state court allowed the prior statement into evidence in violation of Michigan Rule of Evidence 801(d)(1)(B), because Christian had a motivation to lie on February 12 even before he had formally been offered a plea bargain.  Petitioner next asserts that the basis for allowing admission of the statement under Rule 801(d)(1)(B) entitled him to habeas relief under § 2254(d)(2), because the determination that Christian had no motivation to fabricate when he made his statement was an "unreasonable determination of the facts in light of the evidence presented in the state court record."  Finally, Petitioner primarily points to Tome v. United States, 513 U.S. 150 (1995) as the source of clearly established Supreme Court law supporting his claim.

The statement at issue is one Christian made on February 12, 2007, in an interview with police officers at the Macomb County Jail.  The statement was made before any formal plea deal had been negotiated with Christian, but Christian testified at the preliminary examination

that, when he gave the statement, it was his understanding that a plea deal would be made based on what he said.   Christian was released on bond two days after he made the statement.

In his opening statement, defense counsel asserted that Christian was lying <u>both</u> to shift blame away from himself and because he had obtained a favorable plea bargain.   In response to this argument, the prosecutor moved to introduce Christian's preliminary examination testimony and his February 12 statement as prior consistent statements to his expected trial testimony to rebut the suggestion that Christian fabricated his testimony as a result of receiving a favorable plea deal.   The trial court excluded the preliminary examination testimony because it was made after plea negotiations, but it allowed the February 12 statement (and any statements Christian made at the scene) to be admitted to rebut the suggestion of fabrication in light of a plea bargain. 7/30/2010 Tr. at 7-21 (Dkt. 5-29); 8/3/2010 Tr. at 80-84 (Dkt. 5-30).

First, to the extent that Petitioner asserts that the trial court erred in admitting the disputed testimony under the Michigan Rules of Evidence, he merely alleges a state-law violation, which does not entitle him to federal habeas relief.   <u>See, e.g.</u>, <u>Beach v. Moore</u>, 343 F. App'x 7, 11 (6th Cir. 2009).   State courts are the final arbiters of state law and the federal courts will not intervene in such matters.   <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>see also</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005); <u>Sanford v. Yukins</u>, 288 F.3d 855, 860 (6th Cir. 2002). Therefore, the determination of the Michigan Court of Appeals that the statement was properly admitted under Rule 801(d)(1)(B) as a matter of state law is binding on this Court.

Petitioner asserts that he is, nevertheless, entitled to relief under § 2254(d)(2) because the Michigan Court of Appeals made an unreasonable factual determination that Christian did not have a motive to lie in the February 12 statement in light of his admissions at the preliminary examination that he expected a deal would result from his statement.   Section 2254(d)(2) has been interpreted as precluding a federal court from setting "aside reasonable state-court

8

determinations of fact in favor of its own debatable interpretation of the record[.]"   Rice v. Collins, 546 U.S. 333, 335 (2006).   That reasonable minds reviewing the record might disagree about the factual finding does not suffice to supersede the trial court's factual finding.   Id. Thus, where permissible alternatives exist, the factual finding must not be disturbed. Id. at 325; see also Miller-El v. Dretke, 545 U.S. 231, 240, (2005).   This section is worded in the negative and establishes the degree of deference afforded state court findings of fact; it does not create an independent basis for granting habeas relief absent a valid constitutional claim.   Petitioner offers two constitutional bases: the Confrontation Clause and the Due Process Clause.

Petitioner's claim cannot be founded on the Confrontation Clause.   In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.   Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations.   Id. at 54.   In this case, Christian appeared and testified at trial, and was available for cross-examination.   Petitioner had the opportunity to question him about his September 12 statement, and he did so.   Consequently, no confrontation violation occurred.

Nor can Petitioner's claim be supported by the Due Process Clause.   Petitioner primarily relies on Tome v. United States.   That decision, however, merely interprets Federal Rule of Evidence 801(d)(1)(B), which is comparable to Michigan Rule of Evidence 801(d)(1)(B).   In Tome, the Supreme Court stated that, "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited."   513 U.S. at 157.   Nevertheless, there is "no Supreme Court decision holding that the improper use of a witness's prior consistent statements violates the Constitution."   Drain v.

9

Woods, 902 F. Supp. 2d 1006, 1037 (E.D. Mich. 2012).   Tome simply does not purport to create a constitutional limitation on the introduction of prior consistent statements.

Petitioner cites a number of federal court of appeals cases using open-ended standards to determine whether the admission of evidence constitutes a due process violation, such as where the evidence was a "crucial factor," "highly prejudicial," or "egregious."   But the Supreme Court has emphasized "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA."   Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam).   It is doubtful that the cited standards were derived from Supreme Court holdings and can be considered the "clearly established" standard for purposes of § 2254(d) review.   See Olson v. Little, 604 F. App'x 387, 406 (6th Cir. 2015) (discussing how the "crucial factor" standard derives not from the Supreme Court but from a concurrence in a 1968 Fifth Circuit opinion).

In fact, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. . . .   [The Supreme Court has] defined the category of infractions that violate 'fundamental fairness' very narrowly."   Dowling v. United States, 493 U.S. 342, 353 (1990) (discussing whether admission of evidence violates fundamental fairness guarantee of Due Process Clause).   Under clearly established Supreme Court law, the application of state evidentiary rules cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."   Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (citing Patterson v. New York, 432 U.S. 197, 201-202 (1977)).   The clearly established standard for a fundamental-fairness claim is "whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency."   Olson, 604 F. App'x at 406 n.17 (quoting

Dowling, 493 U.S. at 353).   Because Petitioner has not pointed to any decision of the Supreme

Court supporting the position that the admission of the Christian's prior consistent statements

deprived Petitioner of a fundamentally fair trial under this very narrow standard, Petitioner is not

entitled to habeas relief on his claim.   See Benton v. Booker, 403 F. App'x 984, 986 (6th Cir.

2010).

### B.  Exclusion of Videotaped Evidence

Petitioner next argues that his rights under the Confrontation Clause were violated when

he was prohibited from using the video recording of Christian's interview with police to impeach

him at trial.

The Confrontation Clause guarantees a criminal defendant the right to confront the

witnesses against him or her.   Davis v. Alaska, 415 U.S. 308, 315 (1973).   "Cross-examination

is the principal means by which the believability of a witness and the truth of his testimony are

tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly

harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story

to test the witness's perceptions and memory, but the cross-examiner has traditionally been

allowed to impeach, i.e., discredit the witness."   Id. at 314.   The right of cross-examination,

however, is not absolute.   Trial judges "retain wide latitude insofar as the Confrontation Clause

is concerned to impose reasonable limits on such cross-examination based on concerns about,

among other things, harassment, prejudice, confusion of the issues, the witness's safety, or

interrogation that is repetitive or only marginally relevant."   Delaware v. Van Arsdall, 475 U.S.

673, 679 (1986); see also Jordan v. Warden, Lebanon Corr. Inst., 675 F.3d 586, 594 (6th Cir.

2012).   As the Sixth Circuit has recently explained:

> The key issue is whether the jury had enough information to assess the defense's
> theory of the case despite the limits on cross-examination.   So long as
> cross-examination elicits adequate information to allow a jury to assess a

witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination.

United States v. Callahan, 801 F.3d 606, 624 (6th Cir. 2015).

Applying this established precedent, the Michigan Court of Appeals thoroughly addressed the question, as follows:

> Defendant next contends that the trial court abused its discretion in holding that defendant could not impeach Christian's trial testimony with the digitized recordings from his police interviews on January 17, 2007, and February 12, 2007. We disagree.

> Preserved evidentiary issues are reviewed for an abuse of discretion. Mahone, 294 Mich. App. at 212. When constitutional issues are preserved, this Court must determine if the error was harmless beyond a reasonable doubt. People v. Dendel, 289 Mich. App. 445, 475; 797 N.W.2d 645 (2010). An error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Id. If this Court determines that the jury would have convicted defendant even without the error, the defendant is not entitled to a new trial. See id. at 476.

> Defendant argues that the use of the recordings violated his confrontation rights and his right to present a defense. We review de novo a defendant's claim that he was denied his right of confrontation under the Sixth Amendment. People v. Nunley, 491 Mich. 686, 696-697; 821 N.W.2d 642 (2012). We also review de novo a defendant's claim that he was denied his constitutional right to present a defense. People v. Unger (On Remand), 278 Mich. App. 210, 247; 749 N.W.2d 272 (2008).

> Under the Confrontation Clause, a defendant has the right "to be confronted with the witnesses against him" US Const, Am VI; see also Const 1963, art 1, § 20. This right allows a defendant to cross-examine and challenge the witness's credibility, such as by showing that a witness is biased or that the testimony is exaggerated or unbelievable." Pennsylvania v. Richie, 480 U.S. 39, 51-52 (1987) [string citations omitted]. Under MRE 613(b), extrinsic evidence of a witness's prior inconsistent statement is admissible if the witness is "afforded an opportunity to explain or deny the same and the opposite party is afforded and opportunity to interrogate the witness thereon." However, a trial court judge can impose reasonable limits on cross-examination to address concerns of "harassment, prejudice, confusion of the issues, the

witness' safety, or interrogation that is repetitively or only marginally relevant." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986) [string citations omitted]; see also MRE 611(a); <u>People v. Canter</u>, 197 Mich. App. 550, 564; 496 N.W.2d 336 (1992). In addition, it is within the trial court's discretion to preclude impeachment of a witness on a collateral matter. <u>People v. Wofford</u>, 196 Mich. App. 275, 281; 492 N.W.2d 747 (1992).

The trial court was within its discretion in concluding that the digitized images of Christian's demeanor during his police interviews were not admissible. Christian admitted that the majority of his January 17, 2007, statement to police was false. Defendant argues that he should have been allowed to play the portion of the January 17, 2007, interview where Christian is writing on a diagram of the hair salon and showing where he, defendant, and Rhynes were positioned in the salon. When defendant tried to question Christian about the diagram, Christian claimed he did not remember drawing on it. Defendant asserts that this line of question was important because Christian's writing on the diagram indicates that defendant was standing between Christian and Rhynes, which corroborates defendant's testimony that he was ambushed. Defendant avers that the diagram is contrary to Christian's testimony that defendant was facing him and Rhynes, who were standing next to each other and against the wall. However, Christian admitted that it looked like his signature on the diagram. Thus, defense counsel was able to effectively impeach Christian on this issue, and the trial court did not abuse its discretion in precluding cumulative evidence.

Similarly, defendant effectively impeached Christian regarding his trial testimony that Rhynes may have taken Christian's gun from his center console when Rhynes was looking for some change as there were in a drive-through at a fast-food restaurant. Defense counsel impeached Christian with a receipt from the restaurant found in Christian's car, which showed that cash was paid for the order and coins were received in change.

Finally, defendant claims that the recordings could have been used to refresh Christian's allegedly selective memory lapses. However, defense counsel had transcripts from the interviews that he could have used to refresh Christian's memory.

<u>Anderson</u>, 2013 WL 7124284, at *2-*3.

The state-court's decision constituted an entirely reasonable application of clearly established Supreme Court precedent. The jury had more than enough information to assess

Christian's credibility based on the lengthy and effective avenues of cross-examination that were allowed.   They knew he had lied about aspects of the incident to police, and they knew of his obvious motivations for fabricating an exculpatory version of events.   Consequently, Petitioner's right of confrontation was not violated by this minor restriction placed on the defense attorney's cross-examination of Christian.   More to the point, a fairminded jurist could conclude in light of the record evidence that Petitioner's right to confrontation was not violated.

Finally, even if the trial court erred, Petitioner is not entitled to relief.   For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."   Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also Fry v. Pliler, 551 U.S. 112, 117-118 (2007) (confirming that the Brecht standard applies in "virtually all" habeas cases).   Confrontation errors, like other trial errors, are subject to harmless error analysis.   Van Arsdall, 475 U.S. at 684.   Any error in limiting cross-examination of Christian was harmless under this standard.   The jury was well aware of his credibility issues, including the inconsistencies in his statements, his favorable plea deal, and his incentive to testify against Petitioner.   Any error, therefore, did not have a substantial impact on the result of his trial.

### C.  Comment on Petitioner's Silence

Petitioner asserts that his Fourteenth Amendment right to a fair trial was violated when a police officer gave an unresponsive answer during direct examination stating that "I would have loved to have gotten an initial statement from Anderson also."   8/5/2010 Tr. at 100 (Dkt. 5-32). Petitioner claims that the prosecutor's questioning of the officer violated Doyle v. Ohio, 426 U.S. 610 (1976).

In Doyle, the Supreme Court held that it is a violation of the Due Process Clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach

14

exculpatory testimony given by him at trial. This rule rests on the presumption that it is fundamentally unfair to assure a suspect that his silence would not be used against him and then to use his silence to impeach an explanation subsequently offered at trial.   Wainwright v. Greenfield, 474 U.S. 284, 291 (1986).   The goal of Doyle is to prevent a jury from drawing inferences of guilt from a defendant's decision to remain silent after his arrest.   Gravley v. Mills, 87 F.3d 779 (6th Cir. 1996).

It is clear from the record that the prosecutor did not violate Petitioner's due process rights under Doyle.   Doyle applies where a prosecutor attempts to impeach defendant's trial testimony by showing that he remained silent after arrest.   In this case, the prosecutor did not deliberately elicit the police officer's answers regarding Petitioner's decision not to make a statement.   The question concerned Christian's statement to police and had nothing to do with any attempt to elicit a statement from Petitioner.   8/5/2010 Tr. at 100.   After the unresponsive remark was made by the officer, the trial court acted quickly to cure any resulting prejudice by giving a curative instruction directing the jury to disregard the remark.   Id. at 107-108.   Jurors are presumed to follow the court's instructions.   See Penry v. Johnson, 532 U.S. 782, 799 (2001).   The fact Petitioner did not make a statement to police never came up again at trial and was not used by the prosecutor to impeach his testimony.   The Court has no difficulty in concluding that the witness's stray remark which the jury was instructed to disregard did not render Petitioner's trial fundamentally unfair, and that it was nevertheless harmless.

### D.  Prosecutorial Misconduct and Ineffective Counsel

Petitioner's fourth claim asserts that the prosecutor committed misconduct at trial by arguing facts not admitted in evidence and by vouching for the credibility of Christian. Specifically, Petitioner claims that there was no evidence presented at trial to support the prosecutor's argument that Rhynes was shot while lying on the ground.   He also asserts that the

prosecutor improperly argued that Christian had been forthcoming ever since he made his statement at the Macomb County Jail.    Petitioner asserts in his fifth claim that his counsel was ineffective for failing to objection to these un-objected to instances of prosecutorial misconduct.

The U.S. Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."    Berger v. United States, 295 U.S. 78, 88 (1935).   To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."    Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly); Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (confirming that Donnelly/Darden is the proper standard).   "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing in prosecutorial misconduct cases is necessarily imprecise."    Slagle v. Bagley, 457 F.3d 501, 516 (6th Cir. 2006). Indeed, because "the Darden standard is a very general one," courts have  "more leeway . . . in reaching outcomes in case-by-case determinations."    Parker, 132 S. Ct. at 2155.

The Michigan Court of Appeals rejected the claim on the merits as follows:

> Defendant also contends that prosecutorial misconduct denied him a fair trial. We disagree.
>
> To preserve a claim of prosecutorial misconduct, a defendant must "timely and specifically object[], except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." People v. Callon, 256 Mich. App. 312, 329; 662 N.W.2d 501 (2003). Defendant points to three examples of alleged prosecutorial misconduct. In two of these examples, defense counsel did not object. In the third example, defense counsel objected but he did not specifically object that the argument improperly bolstered Christian's credibility. In fact, defendant did not state any legal grounds for his objection.

16

Therefore, this issue is unpreserved.

An unpreserved claim of prosecutorial misconduct is reviewed for plain error affecting substantial rights. Unger, 278 Mich. App. at 235. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." Id. (internal citation omitted). An error does not require reversal "where a curative instruction could have alleviated any prejudicial effect." Unger, 278 Mich. App. at 235.

A claim of prosecutorial misconduct only warrants a new trial when the defendant "was denied a fair and impartial trial." People v. Brown, 279 Mich. App. 116, 134; 755 N.W.2d 664 (2008). The defendant has the burden of showing that any error "resulted in a miscarriage of justice." Id. The prosecutor's statements are reviewed as a whole and in context with the evidence presented and the defendant's arguments. Brown, 279 Mich. App. at 135. Prosecutors are generally "accorded great latitude regarding their arguments and conduct at trial." Unger, 278 Mich. App. at 236. It is improper for a prosecutor to misstate the law or facts; however, "proper jury instructions cure most errors because jurors are presumed to follow the trial judge's instructions." See People v. Masik (On Reconsideration), 285 Mich. App. 535, 542; 775 N.W.2d 857 (2009).

First defendant contends that the prosecutor improperly argued facts not in evidence when he said that Rhynes was shot while on the ground. This argument lacks merit. "A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but [he] is free to argue the evidence and any reasonable inferences that may arise from the evidence." People v. Ackerman, 257 Mich. App. 434, 450; 669 N.W.2d 818 (2003). The prosecutor specifically said:

> Again, at some point the defendant had shot Stanley Rhynes as he laid [sic] on the ground. You can see from this blood splatter which is right by the floor right here. At some point he was shot while he was on the ground. Blood on the floor, blood on the floor corroborates Troy Christian's account.

This argument was not improper; the prosecutor made a reasonable inference from the evidence. See Ackerman, 257 Mich. App. at 450. The evidence showed that Rhynes was shot four times. The shot that entered Rhynes's arm, exited, and then went through his chest without exiting was shot from less than eight inches away. It was

17

reasonable for the prosecutor to infer that Rhynes did not remain standing while he was shot four times—including once in his face and once in the back of his head. In addition, three of the bullets were fired from more than eight inches away, while the fourth was fired from within eight inches. This evidence supports the inference that defendant was approaching Rhynes while shooting him—perhaps because Rhynes was lying on the ground and not moving. Furthermore, the trial court instructed the jury that the attorneys' statements are not evidence.

Second, defendant asserts that the prosecutor impermissibly bolstered Christian's testimony by asking him a series of leading questions on redirect examination. MRE 611(d)(1) states that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." We agree that the prosecution asked Christian leading questions during part of the redirect examination. For example, the prosecutor asked Christian, "[d]id you not tell the detectives that you were shot from behind" and [d]id you not tell the detectives that . . . after you had gone outside, you actually shot the Cadillac window out?" However, a violation of this rule only warrants reversal when "some prejudice or pattern of eliciting inadmissible testimony" is shown. People v. Watson, 245 Mich. App. 572, 587; 629 N.W.2d 411 (2001).

First, the information elicited by the prosecutor during the questioning at issue was admissible as a prior consistent statement pursuant to MRE 801(d)(1)(B). Second, reversal is not required because an objection and instruction could have cured the error. See Unger, 278 Mich. App. at 235. For example, if defense counsel had objected, then the prosecutor could have rephrased his questions to be more open-ended.

Finally, defendant claims that the prosecutor improperly vouched for Christian's credibility when he made the following statements during his closing argument:

> [Christian's] been very forthcoming ever since the Macomb County jail statement which was on February 12th.
>
>                                \*   \*      \*
>
> The February 12th, 2007 jail interview. I think that interview is extremely important because there was no promises made [sic]. . . . The truth is that only his statement made any sense.

18

It is improper for the prosecutor to vouch for the credibility of his witnesses "'to the effect that he has some special knowledge concerning a witness' truthfulness.'" People v. Bennett, 290 Mich. App. 465, 476; 802 N.W.2d 627 (2010), quoting People v. Bahoda, 448 Mich. 261, 276; 531 N.W.2d 659 (1995). The comments cited by defendant do not indicate that the prosecutor had some special knowledge concerning Christian's truthfulness. The prosecutor discussed Christian's admittedly false statements to police before the February 12, 2007, interview and asserted that since that interview, Christian's statements have been consistent. The fact that Christian previously lied to police but was relatively consistent in his story since the February 12, 2007, interview, was not "special knowledge" of the prosecutor. Christian was questioned at length about his previous statements in front of the jury. In addition, "[a] prosecutor may fairly respond to an issue raised by the defendant." Brown, 279 Mich. App. at 135. The prosecutor was responding to defendant's assertion throughout the trial that Christian was not a credible witness. The prosecutor did not improperly vouch for Christian's credibility.

Anderson, 2013 WL 7124284, at *7-*8.

This decision did not constitute an unreasonable application of the established Supreme Court standard. The Michigan Court of Appeals reviewed Petitioner's claims of prosecutorial misconduct in light of the record as a whole and, and even though the state court reviewed the alleged errors under a plain error standard, it looked first to whether the complained conduct was improper. If so, the state court next determined whether the improper conduct rendered Petitioner's trial unfair. The court then found that none of the alleged errors warranted reversal.

Not all fairminded jurists would disagree with the state court's analysis. Indeed, the evidence showed that Rhynes was shot multiple times from different ranges and angles. Especially given the severity of several of the gunshot wounds, it is difficult to imagine a scenario where some of those shots were not inflicted when he was lying down. The prosecutor's comment amounted to a fair inference based on the evidence presented. The other allegations fare no better. The prosecutor did not express a personal belief based on secret knowledge that Christian was testifying truthfully. See United States v. Francis, 170 F. 3d 546,

19

550 (6th Cir. 1999); <u>Griffin v. Berghuis</u>, 298 F. Supp. 2d 663, 674-675 (E.D. Mich. 2004).   It was fair for him to argue that the jury should believe his testimony because he gave a consistent version of events.   Finally, while the prosecutor led Christen on re-direct examination, the same testimony could have easily been presented by way of open-ended questions.   This technically improper method would not lead every fairminded jurist to find that Petitioner's trial was thereby rendered fundamentally unfair.

Considering the extensive state-court analysis of Petitioner's prosecutorial misconduct claims, Petitioner fails to establish that the state-court determination rejecting his prosecutorial misconduct claims were contrary to, or an unreasonable application of, established U.S. Supreme Court law.   Accordingly, Petitioner is not entitled to habeas relief based on his prosecutorial misconduct claims.

Petitioner's related ineffective assistance of counsel claim fails along with the prosecutorial claim.   <u>Bradley v. Birkett</u>, 192 F. App'x 468, 475 (6th Cir. 2006) (counsel not ineffective for failing to object to meritless prosecutorial misconduct claim).   Therefore, Petitioner's fourth and fifth claims do merit a grant of habeas relief.

### E.  Cumulative Error

Petitioner's sixth claim asserts that the accumulation of all the alleged errors rendered his trial fundamentally unfair.   The state court's denial of relief with respect to this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."   <u>Lorraine v. Coyle</u>, 291 F.3d 416, 447 (6th Cir. 2002).   Furthermore, the Sixth Circuit has ruled that such a cumulative error claim is not cognizable on habeas review.   <u>See Sheppard v. Bagley</u>, 657 F.3d 338, 348 (6th Cir. 2011) (citing <u>Moore v. Parker</u>, 425 F.3d 250, 256 (6th Cir. 2005)); <u>see also</u> <u>Moreland v. Bradshaw</u>, 699 F.3d 908, 931 (6th Cir. 2012) (ruling

20

that trial counsel cumulative error claim was not cognizable and citing Hoffner v. Bradshaw, 622 F.3d 487, 513 (6th Cir. 2010), and Moore).   Petitioner thus fails to state a claim upon which relief may be granted as to this issue.   Moreover, given that none of his habeas claims has merit, he cannot establish that he is entitled to relief based upon cumulative error.   Therefore, habeas relief is not warranted on this claim.

### F.  Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.   See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).   "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   Miller-El, 537 U.S. at 327.   In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.   Id. at 336-337.   "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, and concludes that reasonable jurists would not debate the Court's conclusion that the petition should be denied.   Accordingly, a certificate of appealability is not warranted in this case.

## IV.   CONCLUSION

For the reasons stated above, the Court denies the petition for a writ of habeas corpus with prejudice and declines to issue a certificate of appealability.

SO ORDERED.

Dated:   August 10, 2016                              s/Mark A. Goldsmith
             Detroit, Michigan                        MARK A. GOLDSMITH
                                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2016.

                                                      s/Karri Sandusky
                                                      Case Manager